1
2
3
4
5
6
7

8                          **UNITED STATES DISTRICT COURT**

9                          **EASTERN DISTRICT OF CALIFORNIA**

10

11  DIDONTAE QUIONE FARMER,                    )  Case No.: 1:20-cv-00866-SAB (PC)
                                               )
12                      Plaintiff,             )  ORDER DIRECTING CLERK OF COURT TO
                                               )  RANDOMLY ASSIGN A DISTRICT JUDGE TO
13          v.                                 )  THIS ACTION
                                               )
14  KEN CLARK, et.al.,                         )  FINDINGS AND RECOMMENDATIONS
                                               )  RECOMMENDING THE ACTION BE
15                      Defendants.            )  DISMISSED FOR FAILURE TO PROSECUTE,
                                               )  FAILURE TO COMPLY WITH A COURT
16                                             )  ORDER, AND FAILURE TO STATE A
                                               )  COGNIZABLE CLAIM FOR RELIEF
17                                             )
                                               )  (ECF Nos. 1, 6, 7)
18                                             )
                                               )
19                                             )
                                               )
20  _____)

21          Plaintiff Didontae Quione Farmer is appearing *pro se* and *in forma pauperis* in this civil rights

22  action pursuant to 42 U.S.C. § 1983.  This matter was referred to a United States Magistrate Judge

23  pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.  Plaintiff's complaint in this action was

24  filed on June 23, 2020.  (ECF No. 1.)

25          On July 20, 2020, the Court screened Plaintiff's complaint, found no cognizable claims, and

26  granted Plaintiff leave to file an amended complaint within thirty days.  (ECF No. 6.)  However,

27  Plaintiff did not file an amended complaint or otherwise respond to the Court's order.  Therefore, on

28  September 1, 2020, the Court directed Plaintiff to show cause within fourteen days why the action

                                               1

1   should not be dismissed for failure to prosecute, failure to comply with a court order, and failure to
2   state a cognizable claim for relief.  (ECF No. 7.)   Plaintiff has not responded to the Court's order to
3   show cause and the time to do so has expired.  Accordingly, dismissal of the action is warranted.

### I.

### SCREENING REQUIREMENT

6       The Court is required to screen complaints brought by prisoners seeking relief against a
7   governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court
8   must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous
9   or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary
10  relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).

11      A complaint must contain "a short and plain statement of the claim showing that the pleader is
12  entitled to relief. . .."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but
13  "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do
14  not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550
15  U.S. 544, 555 (2007)).  Moreover, Plaintiff must demonstrate that each defendant personally participated
16  in the deprivation of Plaintiff's rights.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

17      Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally
18  construed and to have any doubt resolved in their favor.  Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th
19  Cir. 2012) (citations omitted).  To survive screening, Plaintiff's claims must be facially plausible, which
20  requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is
21  liable for the misconduct alleged.  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962,
22  969 (9th Cir. 2009).  The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and
23  "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility
24  standard.  Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

### II.

### COMPLAINT ALLEGATIONS

27      The Court accepts Plaintiff's allegations in the complaint as true *only* for the purpose of the *sua*
28  *sponte* screening requirement under 28 U.S.C. § 1915.

On October 14, 2019, while housed at California State Prison-Corcoran 3C yard, Plaintiff entered the dining area where he was employed as a cook.  Before entering the dining area, Defendants Wilson, Cooper, Stokes, Rodriguez and Wright huddled together near the furthest exit/entrance.  After Plaintiff entered the dining hall and was present for no more than ten minutes, Defendants Yocum, Rodriguez and Wright entered and approached Plaintiff who was stationed at the culinary serving line, and without any cause ordered Plaintiff to leave stating that Defendant Wilson wanted to speak with Plaintiff.

After existing the dining hall, the Defendants were once again gathered and huddled in a group.  Plaintiff asked Defendant Wilson, "why he needed him" and Wilson responded "Leave! go back to your house" referring to Plaintiff's cell.  Plaintiff was confused and did not understand why Defendant Wilson would order Defendants Yocum, Wright and Rodriguez to remove the Plaintiff from his job and ordered to go back to his cell.

Plaintiff asked Defendant Wilson, "why I don't understand what for," at which Wilson stepped forward, with Defendants Rodriguez, Yocum, Cooper, Wright and Stokes now forming a circle around the Plaintiff in a show of unity to Defendant Wilson.  Defendant Wilson stated, "are you fucking slow?  I'm not going to repeat myself, take him back to his cell."

Defendants Stokes, Rodriguez and Wright began to escort Plaintiff  back to his assigned cell. Plaintiff noticed Defendant Wilson approaching with clenched fists, at which point Plaintiff stopped walking to plead with Defendants as to why he was being targeted.

Plaintiff asked Defendant Wilson, "what" as if there was a problem to which Wilson responded "Your mother."  In a state of disbelief, Plaintiff responded, "what really my mother?"  Wilson then ordered Defendants to take Plaintiff to his cell and the control booth officer was instructed to not allow Plaintiff out of his cell to program or eat.

On October 15, 2019, Plaintiff was inside the chapel to conduct Islamic/Muslim worship. Plaintiff was issued a ducat the previous day notifying him of the time available to go to the chapel. While in the chapel, Defendant Wilson entered with Defendant Cooper and directed Plaintiff to leave stating he was not able to be in there.  Plaintiff knew he had the right to be in the chapel, and Defendant Wilson was deliberately interfering with his right to practice his religion.  Defendant

Wilson continued to tell Plaintiff to "get out or I'll have you taken out." Plaintiff was asked to produce a ducat which he did not have or need to gain access to the chapel facility.

While being escorted out of the chapel by Defendant Cooper, Plaintiff asked why he was denied religious services when he had done nothing wrong. Cooper simply responded that he was just doing what his boss, Defendant Wilson, instructed him to do. Plaintiff later returned to the chapel with a copy of his ducat. However, Defendant Wilson re-entered the chapel and attempted to threaten Plaintiff. Plaintiff asked Wilson if he would leave him alone. Defendant Wilson told Plaintiff, "get out!" at which point Plaintiff stated "no." Defendant Wilson stepped about four inches away from Plaintiff's face while clutching his canister of pepper spray stating, "see that's why your ass is looking at an extra 8 years." Plaintiff gathered his belongings and left the chapel.

On this same date, October 15, 2019, Plaintiff filed a staff complaint regarding Defendant Wilson's conduct. Defendant Brown was assigned to review the complaint. Defendant Brown called Plaintiff to the telephone and stated he was wanted at the 3C yard program office. When Plaintiff approached the program office, he noticed Defendant Brown out front speaking with other officers. Defendant Brown asked Plaintiff to sign the complaint form and no further investigation was conducted.

Associate Warden Defendant Gamboa partially granted Plaintiff's appeal at the second level of review finding Defendants Stokes, Yocum, Wright and Cooper did not violate CDCR policy. Defendant Wilson was never mentioned in the response. Defendant Gamboa, along with Defendants Yocum, Wright, Stokes, Cooper, Rodriguez and Brown refused to speak out against the misconduct of fellow officer Defendant Wilson.

Warden Defendant Clark is responsible for the operations at California State Prison-Corcoran.

### III.

### DISCUSSION

#### A.    Official Capacity

Plaintiff asserts that he is suing each of the named Defendants in both their individual and official capacities. Plaintiff seeks monetary damages, injunctive relief, and declaratory relief against each of the named Defendants.

4

1    "Suits against state officials in their official capacity … should be treated as suits against the

2    State." Hafer v. Melo, 502 U.S. 21, 25 (1991); Holley v. Cal. Dep't of Corr., 599 F.3d 1108, 1111

3    (9th Cir. 2010) (treating prisoner's suit against state officials in their official capacities as a suit

4    against the state of California).  An official capacity suit "represent[s] only another way of pleading an

5    action against an entity of which an officer is an agent."  Kentucky v. Graham, 473 U.S. 159, 165

6    (1985) (citation omitted).  Such a suit "is not a suit against the official personally, for the real party in

7    interest is the entity." Id. at 166.

8    "The Eleventh Amendment bars suits for money damages in federal court against a state, its

9    agencies, and state officials acting in their official capacities." Aholelei v. Dep't of Public Safety, 488

10   F.3d 1144, 1147 (9th Cir. 2007).  Therefore, Plaintiff's claim for monetary damages against all of the

11   named Defendants in their official capacity is barred by the Eleventh Amendment.

12   However, a claim for prospective injunctive relief against a state official in his or her official

13   capacity is not barred by the Eleventh Amendment provided the official has authority to implement the

14   requested relief.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 92 (1989).  Moreover, "[a]

15   plaintiff seeking injunctive relief against the State is not required to allege a named official's personal

16   involvement in the acts or omissions constituting the alleged constitutional violation."  Hartmann v.

17   Cal. Dep't of Corr. & Rehab., 707 F.3d 1114, 1127 (9th Cir. 2013); see Rouser v. White, 707 F. Supp.

18   2d 1055, 1066 (E.D. Cal. 2010) (proper defendant for injunctive relief in suit seeking implementation

19   of CDCR policy is the CDCR Secretary in his official capacity).  Instead, Plaintiff need only identify

20   the law or policy challenged as a constitutional violation and name the official or officials within the

21   entity who is or are alleged to have a "fairly direct" connection with the enforcement of that policy,

22   see Ex Parte Young, 209 U.S. 123, 157 (1908), and can appropriately respond to injunctive relief.

23   Hartmann, 707 F.3d at 1127 (citation omitted); see also Pouncil v. Tilton, 704 F.3d 568, 576 (9th Cir.

24   2012).

25   In this case, Plaintiff has not alleged that a law, policy, or custom caused a violation of his

26   constitutional rights.  Further, Plaintiff has failed to name the official or officials who is or are alleged

27   to have a fairly direct connection with the enforcement of that law, policy, or custom and who can

28

5

appropriately respond to injunctive relief.  Accordingly, Plaintiff has failed to state a cognizable official capacity claim against any named Defendant.

### B.      First Amendment Right to Free Exercise of Religion

The First Amendment guarantees even a prisoner the right to the free exercise of his religion. Cruz v. Beto, 405 U.S. 319, 323 (1972). [T]he free exercise right ... is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." O'Lone v. Shabazz, 482 U.S. 342, 348 (1987); Turner v. Safley, 482 U.S. 78 (1987); Pell v. Procunier, 417 U.S. 817, 822 (1974) ("[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.").

A prisoner's rights under the First Amendment's Free Exercise Clause are implicated when a prison official, without justification that is reasonably related to a legitimate penological interest, burdens the prisoner's practice of his religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. Shakur v. Schriro, 514 F.3d at 884 (the "sincerity test," not the "objective centrality test," triggers application of the Free Exercise Clause); Malik v. Brown, 16 F.3d at 333.  In addition, to violate the Constitution, the interference with religious practice must be more than an inconvenience; it must substantially burden the exercise of religion. Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997), abrogated on other grounds as recognized in Shakur, 514 F.3d at 884-85; see also Eckstrom v. Beard, 705 F. App'x 588, 588-89 (9th Cir. 2017).

Plaintiff has failed to state a cognizable claim for relief.  Plaintiff's allegations demonstrate nothing more than denial of chapel services on one occasion.  As such, Plaintiff has failed to demonstrate that the denial of access to a single religious gathering placed a substantial burden on Plaintiff's exercise of religion.  Indeed, courts in the Ninth Circuit (and elsewhere) have routinely held that the denial of a religious practice on a single, isolated occasion does not constitute a "substantial burden" and thus does not violate the First Amendment.  See e.g., Howard v. Skolnik, 372 F. App'x 781, 782 (9th Cir. 2010) (summary judgment on free exercise claim was appropriate where inmate's allegation of two incidents where prison staff interfered with his fasting did not amount to a substantial burden); Canell v. Lightner, 143 F.3d 1210, 1215 (9th Cir. 1998) ("relatively short-term and sporadic"

interference with religious exercise was not a substantial burden); <u>Pouncil v. Sherman</u>, No. 1:17-cv-00547-AWI-BAM (PC), 2018 WL 646105, at \*3, 2018 U.S. Dist. LEXIS 15961, at \*5-6 (E.D. Cal. Jan 31, 2018) (free exercise claim dismissed at screening because allegation of denial of meals for a single night of Ramadan did not present a substantial burden); <u>Murie v. Crossroads Corr. Ctr.</u>, No. CV 17-00005-GF-BMM-JTJ, 2017 WL 2265145, at \*3, 2017 U.S. Dist. LEXIS 85863, at \*4-6 (D. Mont. Feb. 24, 2017) (free exercise claim dismissed at screening because allegation that plaintiff was not allowed to attend a sweat lodge on a single occasion did not present a substantial burden); <u>Stidhem v. Schwartz</u>, 2:15-cv-00379-TC, 2017 WL 6887139, at \*3, 2017 U.S. Dist. LEXIS 215007, at \*9 (D. Or. Oct. 23, 2017) (summary judgment granted on plaintiff's free exercise claim because a less-than-one-day suspension of plaintiff's kosher diet did not amount to a substantial burden); <u>Hampton v. Ayers</u>, No. CV 07-8130-RSWL (MAN), 2011 WL 2565358, at \*15, 2011 U.S. Dist. LEXIS69742, at \*43-44 (C.D. Cal. June 2, 2011) (summary judgment in favor of defendant appropriate because a single incident of interrupting a religious service was not a substantial burden on plaintiff's religious exercise); <u>Glover v. Evans</u>, No. C 07-2731 JSW (PR), 2007 WL 3022249, at \*2, 2007 U.S. Dist. LEXIS 81612, at \*4 (N.D. Cal. Oct. 15, 2007) (religious exercise claim dismissed at screening because allegation of not being provided with religion-appropriate meal on a single occasion did not state a constitutional violation); <u>Hankins v. N.Y. State Dep't of Corr. Servs.</u>, No. 0:07-CV-0408 (FJS/GHL), 2008 WL 2019655, at \*5, 2008 U.S. Dist. LEXIS 68978, at \*23-25 (N.D.N.Y. Mar. 10, 2008) ("Courts from the Second Circuit have repeatedly found that an allegation that prison officials caused a prisoner to miss one religious service fails to state an actionable claim under the First Amendment.").

Plaintiff's complaint alleges a single, isolated instance in which he was denied access to a religious gathering, and such de minims interference with his religious practice does not violate the Free Exercise Clause.  Accordingly, Plaintiff has failed to state a cognizable claim under the First Amendment.

## C.    Retaliation

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so."  <u>Watison v. Carter</u>, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing <u>Brodheim</u>

v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).  To state a cognizable retaliation claim, Plaintiff must establish a nexus between the retaliatory act and the protected activity.  Grenning v. Klemme, 34 F.Supp.3d 1144, 1153 (E.D. Wash. 2014).  Mere verbal harassment or abuse does not violate the Constitution and, thus, does not give rise to a claim for relief under 42 U.S.C. § 1983.  Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987).  In addition, threats do not rise to the level of a constitutional violation.  Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987).

Although Plaintiff contends that he was retaliated against, he has failed to demonstrate a "but-for" causal nexus between the alleged retaliation and any constitutionally protected activity.  Accordingly, Plaintiff fails to state a cognizable retaliation claim.

**D.      Inmate Appeal Process**

The Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. at 221.  Plaintiff does not a have protected liberty interest in the processing his appeals, and therefore, he cannot pursue a claim for denial of due process with respect to the handling or resolution of his appeals.  Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)).  Similarly, Plaintiff may not impose liability on a defendant simply because he or she played a role in processing or responding to Plaintiff's inmate appeals.  See Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (because an administrative appeal process is only a procedural rights, no substantive right is conferred, no due process protections arise, and the "failure to process any of Buckley's grievances, without more, is not actionable under section 1983.").  Therefore, Plaintiff cannot seek liability against any Defendant for his/her involvement in reviewing and/or denying his inmate appeals.

///

8

### E.   Supervisory Liability

Warden Defendant Clark is responsible for the operations at California State Prison-Corcoran. However, in order to proceed against an individual who is a supervisor, Plaintiff must demonstrate that he/she personally participated in any underlying alleged violations of Plaintiff's constitutional rights. That is, Plaintiff must allege facts plausibly showing their "personal involvement in the constitutional deprivation" or "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989).   Plaintiff has not done so here.  Plaintiff's complaint is devoid of any allegations supporting the existence of a supervisory liability claim against Warden Clark.  Thus, the only basis for such a claim would be respondeat superior, which is precluded under section 1983.  Accordingly, Plaintiff fails to state a cognizable claim against Warden Clark.

### F.   Declaratory Relief

Plaintiff seeks a declaratory judgment that his rights were violated. "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." Eccles v. Peoples Bank of Lakewood Village, 333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." United States v. Washington, 759 F.2d 1353, 1357 (9th Cir. 1985).

In the event that this action reaches trial and the jury returns a verdict in favor of Plaintiff, that verdict will be a finding that Plaintiff's constitutional rights were violated.  Accordingly, a declaration that any Defendant violated Plaintiff's constitutional rights is unnecessary.

## IV.

## FAILURE  TO OBEY COURT ORDER AND FAILURE TO PROSECUTE

Here, the Court screened Plaintiff's complaint, and on July 20, 2020, an order issued providing Plaintiff with the legal standards that applied to his claims, advising him of the deficiencies that needed to be corrected, and granting him leave to file an amended complaint within thirty days.  (ECF No. 6.) Plaintiff did not file an amended complaint or otherwise respond to the Court's July 20, 2020 order.

Therefore, on September 1, 2020, the Court ordered Plaintiff to show cause within fourteen (14) days why the action should not be dismissed.  (ECF No. 7.)  Plaintiff failed to respond to the September 1, 2020 order.

Local Rule 110 provides that "[f]ailure of counsel or of a party to comply with these Rules or with any order of the Court may be grounds for imposition by the Court of any and all sanctions . . . within the inherent power of the Court."  The Court has the inherent power to control its docket and may, in the exercise of that power, impose sanctions where appropriate, including dismissal of the action.  Bautista v. Los Angeles County, 216 F.3d 837, 841 (9th Cir. 2000).

A court may dismiss an action based on a party's failure to prosecute an action, failure to obey a court order, or failure to comply with local rules.  See, e.g. Ghazali v. Moran, 46 F.3d 52, 53-54 (9th Cir. 1995) (dismissal for noncompliance with local rule); Ferdik v. Bonzelet, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (dismissal for failure to comply with an order to file an amended complaint); Carey v. King, 856 F.2d 1439, 1440-41 (9th Cir. 1988) (dismissal for failure to comply with local rule requiring pro se plaintiffs to keep court apprised of address); Malone v. United States Postal Serv., 833 F.2d 128, 130 (9th Cir. 1987) (dismissal for failure to comply with court order); Henderson v. Duncan, 779 F.2d 1421, 1424 (9th Cir. 1986) (dismissal for lack of prosecution and failure to comply with local rules).

"In determining whether to dismiss an action for lack of prosecution, the district court is required to consider several factors: '(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.' "  Carey, 856 F.2d at 1440 (quoting Henderson, 779 F.2d at 1423).  These factors guide a court in deciding what to do, and are not conditions that must be met in order for a court to take action.  In re Phenylpropanolamine (PPA) Products Liability Litigation, 460 F.3d 1217, 1226 (9th Cir. 2006) (citation omitted).

In this instance, the public's interest in expeditious resolution of the litigation and the Court's need to manage its docket weigh in favor of dismissal.  In re Phenylpropanolamine (PPA) Products Liability Litigation, 460 F.3d at 1226.  Plaintiff was ordered to file an amended complaint and within thirty days of July 20, 2020 and has not done so.  Accordingly, the operative pleading is the June 23, 2020 complaint which has been found not to state a cognizable claim.  Plaintiff's failure to comply with

the order of the Court by filing an amended complaint hinders the Court's ability to move this action towards disposition.  This action can proceed no further without Plaintiff's compliance with the order and his failure to comply indicates that Plaintiff does not intend to diligently litigate this action.

Since it appears that Plaintiff does not intend to litigate this action diligently there arises a rebuttable presumption of prejudice to the defendants in this action.  In re Eisen, 31 F.3d 1447, 1452-53 (9th Cir. 1994).  The risk of prejudice to the defendants also weighs in favor of dismissal.

The public policy in favor of deciding cases on their merits is greatly outweighed by the factors in favor of dismissal.  It is Plaintiff's responsibility to move this action forward.  In order for this action to proceed, Plaintiff is required to file an amended complaint curing the deficiencies in the operative pleading.  Despite being ordered to do so, Plaintiff did not file an amended complaint or respond to the order to show cause and this action cannot simply remain idle on the Court's docket, unprosecuted.  In this instance, the fourth factor does not outweigh Plaintiff's failure to comply with the Court's orders.

Finally, a court's warning to a party that their failure to obey the court's order will result in dismissal satisfies the "consideration of alternatives" requirement.  Ferdik, 963 F.2d at 1262; Malone, 833 F.2d at 132-33; Henderson, 779 F.2d at 1424.  The Court's July 20, 2020 order requiring Plaintiff to file an amended complaint expressly stated: "If Plaintiff fails to file an amended complaint in compliance with this order, the Court will recommend to a district judge that this action be dismissed consistent with the reasons stated in this order."  (ECF No. 6.)  In addition, the Court's September 1, 2020, order to show cause specifically stated: "Plaintiff is warned that failure to comply with this order will result in a recommendation to a District Judge that the instant action be dismissed, with prejudice, for failure to prosecute, failure to obey a court order, and failure to state a cognizable claim for relief."  (ECF No. 7.)  Thus, Plaintiff had adequate warning that dismissal would result from his noncompliance with the Court's order.

## V.

## CONCLUSION AND RECOMMENDATION

The Court has screened Plaintiff's complaint and found that it fails to state a cognizable claim. Plaintiff has failed to comply with the Court's order to file an amended complaint or respond to the Court's order to show why the action should not be dismissed.  In considering the factors to determine

if this action should be dismissed, the Court finds that this action should be dismissed for Plaintiff's failure to state a cognizable claim, failure to obey the July 20, 2020 and September 1, 2020 orders, and failure to prosecute this action.

Accordingly, it is HEREBY ORDERED that the Clerk of Court shall randomly assign a Fresno District Judge to this action.

Further, IT IS HEREBY RECOMMENDED that this action be DISMISSED for Plaintiff's failure to state a claim, failure to comply with a court order, and failure to prosecute.

This Findings and Recommendation is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within fourteen **(14) days** of service of this Recommendation, Plaintiff may file written objections to this findings and recommendation with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." The district judge will review the magistrate judge's Findings and Recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **September 28, 2020**

_____
UNITED STATES MAGISTRATE JUDGE